UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| **MARION ALEXIS MOON**, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>**FLORIDA HOME-IMPROVEMENT ASSOCIATES, INC.**, a Florida corporation,<br><br>*Defendant.* | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

**CLASS ACTION COMPLAINT**

Plaintiff Marion Alexis Moon ("Plaintiff Moon" or "Moon") brings this Class Action Complaint and Demand for Jury Trial against Defendant Florida Home-Improvement Associates, Inc. ("Defendant FHIA Remodeling" or "FHIA Remodeling") to stop the Defendant from violating the Telephone Consumer Protection Act ("TCPA") by making telemarketing calls after the consumer specifically opted out of receiving any more phone communications from the Defendant. Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff, for this Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

**PARTIES**

1. Plaintiff Marion Alexis Moon is a resident of Bolton, North Carolina.

2. Defendant FHIA Remodeling is a Florida corporation with its principal place of business in Fort Lauderdale, Florida. Defendant FHIA Remodeling conducts business throughout this District.

1

## JURISDICTION AND VENUE

3. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4. This Court has personal jurisdiction over the Defendant and venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant has its headquarters in this District and the wrongful conduct giving rise to this case was directed from this District.

## INTRODUCTION

5. As the Supreme Court explained at the end of its term this year, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

6. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

7. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

8. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

9. According to online robocall tracking service "YouMail," 4.4 billion robocalls were placed in April 2024 alone, at a rate of 146.9 million per day. www.robocallindex.com (last visited May 26, 2024).

10. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

11. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

12. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

**COMMON ALLEGATIONS**

13. FHIA is a d/b/a of Florida Home-Improvement Associates, Inc.[3]

14. Defendant FHIA Remodeling is a remodeling corporation that provides windows and door installations throughout Florida.[4]

15. Defendant FHIA Remodeling uses telemarketing as a way to promote its remodeling solutions to consumers.

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
[3] https://fhiaremodeling.com/careers/
[4] https://www.linkedin.com/company/FHIA Remodeling/about/

3

16. Multiple consumers across the country have been receiving unwanted solicitation calls from Defendant FHIA Remodeling like Plaintiff Moon, and have posted complaints regarding the same, including complaints about receiving unsolicited calls *after* demanding that the calls stop, including but not limited to:

- "this company has done nothing but harass me for dayssssss! I'm not sure how they even have time to do anything else! I have never used their services and never would. I don't even own a home so I have no idea who sold them my info, but either way, you would think that not returning the call would mean I'm not interested. instead they call, no lie, at least hourly all day long. when you block them, they change the number by 1 or 2 digits. it's worse than a toxic ex boyfriend who literally can't take no for an answer."[5]

- "Poor quality, high irritation. Cold calling garbage. I'm on the Do not call list, this company is harassing me.
Update: ***They continued cold calling even after sending this message***. Zero internal communication between departments." [6] (emphasis added)

- 
  Jonathan Smith doesn't recommend **FHIA Remodeling**.
  December 2, 2023
  
  FHIA Remodeling has a call center that aquires leads but fails to scrub their leads monthly to determine if any of these leads are on the National & State DO NOT CALL LIST. I have provided them with my info to attempt to resolve out of court. Violations per call could cost up to $1,500 per call. Businesseses that have knowledge of the TCPA violations leads to penaltys of $6,000 for only 4 calls. When I attempted to contact the registered agents of FHIA Remodeling, they ghosted me by blocking my emails. After doing some digging I found, they have a history of calling others on the DNC list because they dont think they will get sued. I was going to let them off for a $500 penalty until finding out they make dozens of calls to these people and wont take responsability. [7]

- 
  Luke Potwine doesn't recommend **FHIA Remodeling**.
  April 8, 2023
  
  They dont stop calling!!! Blocked 3 different numbers and they just create a new one to call. Not just once or twice a day... like 10 times a day! I've asked for them to stop calling, but never listen. Next step is contacting a lawyer to get them to stop. [8]

---

[5] https://www.google.com/search?q=fhia+remodeling
[6] *Id.*
[7] https://www.facebook.com/FHIARemodeling/reviews
[8] *Id.*

4



17. In response, Plaintiff brings this case seeking injunctive relief requiring the Defendant to cease from violating the TCPA by failing to maintain adequate policies and procedures for maintaining and honoring do not call requests, as well as an award of statutory damages to the members of the Class and costs.

**PLAINTIFF'S ALLEGATIONS**

18. Plaintiff Moon is the sole owner and user of her cell phone number ending in 0953.

19. Plaintiff Moon has owned her cell phone number for over 1 year.

20. Plaintiff Moon uses her cell phone number for personal use only as one would use a landline telephone number in a home. She has never associated her phone number with a business.

21. Plaintiff Moon pays for her cell phone service. It is not reimbursed by a business.

22. Plaintiff Moon received a number of unsolicited calls to her cell phone on:

- May 13, 2024 at 12:48 PM from 305-239-6697;
- May 13, 2024 at 3:48 PM from 305-239-6697 – 3 back-to-back calls;
- May 13, 2024 at 5:38 PM from 305-239-6697;
- May 13, 2024 at 6:34 PM from 305-239-6697 – 2 back-to-back calls;
- May 14, 2024 at 8:48 AM from 305-239-6697 – 2 back-to-back calls;
- May 14, 2024 at 9:46 AM from 305-239-6697 – 2 back-to-back calls;

---

[9] *Id.*

- May 14, 2024 at 11:48 AM from 305-239-6697 – 4 back-to-back calls;
- May 14, 2024 at 12:18 PM from 305-239-6697;
- May 14, 2024 at 12:48 PM from 305-239-6697;
- May 14, 2024 at 1:03 PM from 305-239-6697;
- May 14, 2024 at 1:05 PM from 305-239-6697 – 2 back-to-back calls;
- May 14, 2024 at 2:05 PM from 305-239-6697 – 2 back-to-back calls;
- May 14, 2024 at 3:13 PM from 305-239-6697;
- May 14, 2024 at 3:56 PM from 305-239-6697;
- May 14, 2024 at 4:16 PM from 305-239-6697;
- May 14, 2024 at 4:48 PM from 305-239-6697;
- May 14, 2024 at 5:22 PM from 305-239-6697;
- May 16, 2024 at 5:55 PM from 305-317-1846;
- May 17, 2024 at 10:56 AM from 305-847-9245;
- May 17, 2024 at 12:15 PM from 305-317-1845;
- May 17, 2024 at 1:41 PM from 305-340-3148;
- May 17, 2024 at 5:47 PM from 305-306-0338;
- May 18, 2024 at 10:36 AM from 305-317-1846;
- May 20, 2024 at 10:55 AM from 305-847-9245; and
- May 20, 2024 at 12:47 PM from 305-317-1845.

23. None of the above calls were answered.

24. 305-239-6697 is owned/operated by FHIA Remodeling. When 305-239-6697 is called, a live representative identifies the company name as FHIA Remodeling.

25. Every call listed above displayed the caller ID Fhia Remodeling on the Plaintiff's cell phone:



26. On May 20, 2024 at 2:52 PM, Plaintiff received an unsolicited call from 305-340-3148 to her cell phone.

27. Plaintiff noticed that this call displayed the name Fhia Remodeling, like other calls she received, so she answered the call:



28. When Plaintiff Moon answered this call, the caller identified the company name as FHIA Remodeling and that they were calling to provide a remodeling quote to a woman named Rose.

29. Plaintiff Moon told the caller that they were calling the wrong number and she asked the caller to stop calling her cell phone number.

30. Despite her clear stop request, Plaintiff Moon received additional unsolicited calls from the below numbers to her cell phone, including:

- May 20, 2024 at 6:00 PM from 305-306-0338;
- May 21, 2024 at 1:12 PM from 305-847-9245;

- May 21, 2024 at 3:58 PM from 305-317-1845;
- May 22, 2024 at 10:19 AM from 305-340-3148;
- May 22, 2024 at 12:14 PM from 305-306-0338;
- May 24, 2024 at 11:22 AM from 305-317-1845;
- May 24, 2024 at 1:11 PM from 305-340-3148;
- May 24, 2024 at 4:26 PM from 305-306-0338;
- May 24, 2024 at 7:01 PM from 305-317-1846;
- May 25, 2024 at 12:52 PM from 305-847-9245;
- May 29, 2024 at 12:35 PM from 305-340-3148;
- May 29, 2024 at 2:21 PM from 305-306-0338;
- May 29, 2024 at 6:27 PM from 305-847-9245;
- May 30, 2024 at 1:33 PM from 305-306-0338;
- May 30, 2024 at 6:16 PM from 305-847-9245;
- May 31, 2024 at 11:59 AM from 305-340-3148;
- May 31, 2024 at 3:18 PM from 305-306-0338;
- May 31, 2024 at 6:07 PM from 305-317-1846;
- June 3, 2024 at 3:39 PM from 305-340-3148;
- June 6, 2024 at 11:12 AM from 305-340-3148; and
- June 6, 2024 at 1:15 PM from 305-306-0338.

31. All of the aforementioned calls displayed the caller ID Fhia Remodeling.

32. The unwanted solicitation calls that Plaintiff received from FHIA Remodeling have harmed Plaintiff Moon in the form of annoyance, nuisance, and invasion of privacy, and disturbed

the use and enjoyment of her phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on the phone.

33. The unsolicited calls also caused considerable frustration, as Plaintiff Moon felt harassed by the number of communications she received, especially after telling FHIA Remodeling to stop contacting her.

34. Seeking redress for these injuries, Plaintiff Moon, on behalf of herself and a Class of similarly situated individuals, bring suit under the TCPA.

**CLASS ALLEGATIONS**
**Class Treatment Is Appropriate for Plaintiff's TCPA Claims**
**Arising From the Defendant's Actions**

35. Plaintiff Moon brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seek certification of the following Class:

> **Internal Do Not Call Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant called on their residential telephone line at least two times (2) including at least once after the consumer had communicated their wish to not receive any further calls from the Defendant (3) for substantially the same reason Defendant called Plaintiff.

36. The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, their subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant has been fully and finally adjudicated and/or released. Plaintiff Moon anticipates the need to amend the Class definitions following appropriate discovery.

37. **Typicality and Numerosity**: Plaintiff is a member of the Class who received calls as part of the same telemarketing campaign as other Class members, and on information and belief, there are hundreds, if not thousands of members of the Class such that joinder of all members is impracticable.

38. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

(a) whether Defendant's conduct violated the TCPA;

(b) whether the Defendant engaged in telemarketing without implementing adequate internal policies and procedures for maintaining an internal do not call list;

(c) whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

39. **Adequate Representation**: Plaintiff Moon will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in class actions. Plaintiff Moon has no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff. Plaintiff Moon and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff Moon nor her counsel have any interest adverse to the Class.

40. **Appropriateness**: This class action is also appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable to the Class and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final class-wide injunctive relief appropriate.

Defendant's business practices apply to and affect the members of the Class uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Class as wholes, not on facts or law applicable only to Plaintiff Moon. Additionally, the damages suffered by individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Class to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

# FIRST CLAIM FOR RELIEF
## Telephone Consumer Protection Act
### (Violation of 47 U.S.C. § 227)
### (On Behalf of Plaintiff Moon and the Internal Do Not Call Class)

41. Plaintiff repeats and realleges paragraphs 1 through 40 of this Complaint and incorporates them by reference herein.

42. Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.
>
> (4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call

is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long-distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

43. Defendant placed calls to Plaintiff and members of the Class without implementing internal procedures for maintaining a list of persons who request not to be called by the entity and/or by implementing procedures that do not meet the minimum requirements to allow the Defendant to initiate telemarketing calls.

44. The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

45. The Defendant has, therefore, violated 47 U.S.C. § 227(c)(5). As a result of Defendant's conduct, Plaintiff and the other members of the Class are each entitled to up to $1,500 per violation.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Moon individually and on behalf of the Class, prays for the following relief:

a)   An order certifying this case as a class action on behalf of the Class as defined above; appointing Plaintiff Moon as the representative of the Class; and appointing her attorneys as Class Counsel;

b)   An award of damages and costs;

c)   An order declaring that Defendant's actions, as set out above, violate the TCPA;

d)   An injunction requiring the Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Class; and

e)   Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Moon requests a jury trial.

DATED this 19th day of June, 2024.

**MARION ALEXIS MOON**, individually and on behalf of all others similarly situated,

By: /s/ *Stefan Coleman*

Stefan Coleman
COLEMAN PLLC
18117 Biscayne Blvd
Suite 4152
Miami, FL 33160
(877) 333-9427
law@stefancoleman.com

Avi R. Kaufman
kaufman@kaufmanpa.com
KAUFMAN P.A.
237 S Dixie Hwy, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881

*Attorney for Plaintiff and the putative Class*